IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

THOMAS TERRAIL NOLEN                                                                                          PLAINTIFF

v.                                            Civil No. 6:21-CV-06092-SOH-MEF

SHERIFF MIKE CASH,
CAPTAIN JOSH LINGO and
DR. DARRELL ELKINS[1]                                                                                        DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is the Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Indisputable Material Facts filed on December 15, 2022.  (ECF Nos. 38-40). Plaintiff filed a Response in Opposition, Brief in Support, and Statement of Disputed Facts on December 30, 2022.  (ECF Nos. 42-44).  He filed a supplemental Response on January 5, 2023. (ECF No. 45).

### I.       BACKGROUND

#### A.      Procedural Background

Plaintiff, Thomas Terrail Nolen ("Nolen"), filed his Complaint on June 1, 2021.  (ECF No. 1).  Nolen's Complaint alleges the delay or denial of medical care while incarcerated in the Hot Springs County Jail ("HSCJ") in 2020.  (*Id*.).  For his first claim, Nolen alleges that on or about

---

[1] Formerly John Doe Doctor.

1

April 2020, he was arrested and taken to the Baptist medical hospital in Malvern, Arkansas.[2] (*Id*. at 4). He states he was diagnosed with a hernia and suffered "terrible pain" from the violent conduct of the arresting officers. (*Id*. at 4, 8). When he was nearing the end of his 90-day parole violation, he asked for copies of his medical records and realized the hospital ER records advised him to follow-up with Dr. Hemo for surgery the next day. (*Id*.). He alleges all Defendants in this case knew about his injuries, but he was incarcerated for 70 days before he was released to seek the surgical follow-up. (*Id*.). He met with Defendant Cash and showed him his hernia. (*Id*. at 8). Defendant Cash notified the Parole Board, and Nolen's lawyer told him Judge Chris Williams was going to release him if his family would take him to the VA hospital. (*Id*.). Nolen provided his mother's phone number. (*Id*.). Nolen alleges he was kept two days past when the Parole Board released him. (*Id*.). Then parole officer Danny Marsh and a Doe officer shackled him and placed an ankle monitor on him. They drove him to the VA hospital in Little Rock and abandoned him in the VA hospital[3] parking lot at the beginning of the COVID-19 pandemic. (*Id*.). Nolen had no money or phone and was wearing jail flip-flops, a t-shirt, and jogging pants. He walked to Malvern before being picked up and given a ride home. (*Id*.). Plaintiff alleges this caused him even more injury and pain. (*Id*.). He alleges Marsh told him he was abandoned at the Judge's instruction. (*Id*. at 9-10). He further alleges the Defendants did not want to release him, and "tried to prolong treatment from Health Services." (*Id*. at 10).

Nolen proceeds against all Defendants in both their individual and official capacity for this claim. (ECF No. 1, p. 10). In support of his official capacity claim, he alleges HSCJ often denies

---

[2] The summary judgment record indicates he was arrested on February 15, 2020. (ECF No. 40-2). There is no evidence in the record of an April 2020 arrest and intake with HSCJ.
[3] Nolen has addressed the abandonment in another case pending before the Court: *Nolen v. Cash*, Case No. 6:21-cv-06151-SOH-MEF. A preservice Report and Recommendation is pending in that case.

medical attention to inmates and does not follow up or make medical records available. (*Id*. at 5). He states there are two incidents involving him where Defendants knew about emergency room recommendations and did nothing. (*Id*.).

For his second claim, Nolen alleges that on or about July 2020, he was in his yard when a Doe officer pulled into his driveway. Frightened because of previous incidents with the police, Nolen ran, and he was then shot in the back with a Taser, rendering him unconscious. (ECF No. 1, p. 10). He woke up in the hospital, where the Taser prongs were removed. He woke up again in HSCJ. (*Id*.). He remembers a nurse saying that he needed to see a face surgeon because he had a broken jaw and a fractured left orbital.[4] He also experienced a back problem, and he had sprained or torn ligaments in the left wrist and shoulder from the arrest. (*Id*.). Defendant Lingo, Defendant Elkins, and a Doe Officer[5] denied him medical attention "in the form of no following up with me seeing a face surgeon after I was taken to the emergency room in Hot Springs at National Park Medical Center." (*Id*. at 5). Nolen alleges he received no treatment for his face despite submitting multiple requests and grievances. (*Id*.). He alleges that Defendants did nothing except "pro-long Health Services." (*Id*.). Nolen proceeds against Defendants Lingo and Elkin in both their official and individual capacity. (*Id*.). For his official claim, he repeats the allegation that HSCJ often denies medical assistance or doctor follow-up instructions. (*Id*. at 6). Nolen alleges Defendants Lingo and Elkins knew about the emergency room recommendations for treatment and did nothing.[6]

---

[4] It is not clear from the record if Nolen heard this nurse at the hospital ER or in HSCJ.
[5] This Doe officer has not been identified, and the time for Nolen to do so has long past in this case.
[6] In this later section of his Complaint, Nolen also alleges his plea was accepted while he was injured and concussed, but this topic is not related to his denial of medical care claims and will not be addressed.

3

Nolen's third claim alleges that Defendant Elkins denied him medical care on or about March 2020 and July 2020. (ECF No. 1, p. 6). He alleges that on two occasions, Defendant Elkins did not follow up on advised medical treatment by a hospital emergency room. (*Id*.). He also claims Defendant Elkins did not treat him for diabetes. (*Id*.). Nolen states, "[h]e is responsible for my pain and suffering, and the long term affects of my injuries; partial use of left arm, hernia issues needing surgery, poor vision and eyesight; uneven bite of teeth breaking because of broken jaw." (*Id*.). Nolen proceeds against Defendant Elkins in both his official and individual capacity. (*Id*.). To support his official capacity claim, Nolen alleges Defendant Elkins has repeatedly shown that he is not concerned with the health of prisoners, and that he believes it is not his responsibility to give proper treatment, which he says is a common practice with police and police doctors. (*Id*. at 7).

Nolen seeks compensatory damages in the amount of $2,000,000.00 dollars for his claims. (ECF No. 1, p. 6).

Defendants filed their Summary Judgment Motion, Brief in Support, and Statement of Indisputable Material Facts on December 15, 2022. (ECF Nos. 38-40). They argue summary judgment in their favor is appropriate because Defendants were not deliberately indifferent to Plaintiff's serious medical needs, they are entitled to qualified immunity, and HSCJ had no unconstitutional policies to support any official capacity claims. (ECF No. 39).

Nolen filed his Response on December 30, 2022. (ECF No. 45). He emphasizes that Defendants were all aware of his serious medical needs, pointing to discovery documents. (ECF No. 44, pp. 11, 13). Despite having this information, he argues that Defendants chose to do nothing. He states his grievances and requests detailed his broken bones and follow up instructions. He filed a second Response on January 5, 2023. (ECF No. 45). This second

4

Response did not address the merits of the Defendants' summary judgment motion; instead it underscored Plaintiff's *pro se* status, and Nolen asked the Court to send back his first Response for more work if it was unsatisfactory. (*Id*.).

**B.      Plaintiff's Medical Encounter and Incarceration Timeline**

On May 2, 2018, Nolen presented at the Baptist Health – Hot Spring County Emergency Room ("ER") with hernia pain. (ECF No. 40-8). He was advised to get a hernia truss, avoid heavy lifting, and follow up with surgery "asap." (*Id*. at 20). He went back to the Baptist Health – Hot Spring County ER again on May 10, 2018, stating that nothing had changed with the hernia, but he was "unsure how to get with a surgeon." (*Id*. at 17). Notes indicate he was referred to Dr. Hemo. (*Id*.). He was admitted for hernia surgery with Dr. Hemo on June 18, 2018. (*Id*. at 15). The surgery was postponed, and Nolen was discharged when he tested positive for cocaine. (*Id*. at 16). He was advised to abstain from recreational drugs, and Dr. Hemo's office would call him in three weeks to reschedule surgery. (*Id*. at 15-16). He was admitted for surgery with Dr. Hemo again on July 16, 2018. (*Id*. at 13). The surgery was cancelled, and he was discharged when he tested positive for cocaine again. (*Id*.). Nolen also submitted a VA Hospital record indicating he presented there asking for a surgery consult for his hernia on May 10, 2018. (ECF No. 44-1 at 35).

Nolen presented at the Baptist Health – Hot Spring County ER on June 19, 2019, once again requesting care for his hernia. (ECF No. 40-8 at 8). He denied pain, but stated it was getting progressively harder to reduce. He reported the hernia had emerged five years prior. (*Id*.). He asked for a work excuse. (*Id*. at 9). The ER physician advised him to follow up with his primary care provider in two days and as needed. (*Id*. at 10).

Nolen was booked into HSCJ on December 26, 2019, and he was released that same day for emergency surgery. (ECF No. 40-2 at 1). Police took him to the Baptist Health – Hot Spring

County ER. (ECF No. 40-8 at 7). Nolen complained of right groin pain and right wrist pain. He attributed the right wrist pain to overly tight handcuffs. (*Id*.). He reported his groin pain began when his boots were being taken off. (*Id*.). He was transferred to an acute care general hospital for inpatient care. (*Id*. at 6). Nolen was then seen for an emergency surgical consult at Baptist Health – Little Rock on the same date. (ECF No. 40-11 at 1). The primary concern was ischemia to the bladder. (*Id*.). After examination, it was determined that outpatient elective surgery was the appropriate management course. (*Id*. at 2). He was given Toradol and a physician's phone number to call for follow-up. (*Id*.).

Nolen again went to the Baptist Health – Hot Spring County ER on January 5, 2020. (ECF No. 40-8 at 4). He was given a Toradol injection and told to follow up with his primary care physician within two days. (*Id*. at 5).

After his arrest on February 15, 2020, Nolen was taken by police to the Baptist Health - Hot Spring County ER that same day. (ECF No. 40-8). He complained of "low ba[ck] pain," groin pain, and stated "he needed something done to his hernia tonight." (*Id*. at 1). He also complained of pain in his lower jaw due to an injury from the arrest. (*Id*.). No facial fracture or acute traumatic injury to the cervical spine were found. (*Id*. at 2). Nolen refused to give a sample for urinalysis, and he refused a catheter for bladder distention, so medical staff were unable to complete a full work up. (*Id*. at 3). He was diagnosed with a right inguinal hernia, hernia bladder – reduced, and "noncompliance by refusing intervention or support." (*Id*.). He was given a prescription for an inguinal truss, and it was recommended that he follow up with surgery "asap" by calling Dr. Hemo on Monday. (*Id*.).

Nolen was booked into the HSCJ on February 16, 2020. (ECF No. 40-2 at 2). He was released on May 1, 2020, so that he could get treatment for his hernia. (ECF No. 40-12 at 19, 22).

6

Nolen testified in his deposition that he was abandoned at the VA Hospital in Little Rock. (ECF No. 40-12, p. 22). Because it was the beginning of the COVID-19 pandemic and he did not have an appointment, he was not permitted to enter the ER and was told to exit the hospital premises. (*Id*. at 22-23). He hitchhiked back home, arriving on May 4th or 5th. (*Id*.). He testified he made a couple of calls to the VA to try to establish care, but he was never able to make an appointment before he was arrested again on July 13, 2020. (*Id*. at 23). A VA progress note indicates Nolen called the VA to have a primary care physician assigned to him on June 5, 2020. (ECF No. 44-1 at 34). They left a voicemail and sent a letter, but they were unable to reach him. (*Id*. at 34, 36).

On July 13, 2020, Nolen was taken to the CHI St. Vincent Hospital ER after being tased and arrested. (ECF No. 40-7 at 2). The taser probe was still in his right shoulder, and Nolen complained of pain in his left rib cage and left wrist. (*Id*. at 1). He was diagnosed with a closed blow-out fracture of the left orbital floor, closed fracture to his right jaw, contusion of the chest wall, foreign body in skin, left wrist sprain, and methamphetamine abuse. (*Id*.). He was prescribed amoxicillin and naproxen. (*Id*. at 2). His hernia was also noted. (*Id*. at 6). Bulging discs at C5 and C8 were thought to be "sequela from previous traumatic injury." (ECF No. 44-1 at 13). The radiology notes regarding the left orbital fracture indicated the fracture "may be causing entrapment of the medial rectus muscle and producing disconjugate gaze." (*Id*. at 28). His uncorrected visual acuity in the right eye was documented as 20/40; his left eye is described as "blurry. Can't see sign." (*Id*. at 27). He was referred to Dr. Baldwin, an oral surgeon, and Dr. Holt, an ophthalmologist, for follow-up care. (*Id*. at 12, 21). The ER physician discussed the left orbital fracture with Dr. Baldwin, who indicated he would "follow in clinic to discuss surgical repair." (*Id*. at 21). He was discharged in a wheelchair due to concerns over his head injury and

visual acuity in the left eye. (*Id*. at 23, 29, 31). Nolen was then booked into HSCJ on July 13, 2020. (ECF No. 40-2 at 3). HSCJ medication administration records were provided for August and September of 2020, and they indicate Nolen received naproxen and amoxicillin. (ECF No. 44-1 at 39-40). No medication administration record was provided for July 2020 by either party.

Nolen was transferred to the Arkansas Division of Correction ("ADC") on October 14, 2020. (ECF No. 40-9). Handwritten notes indicate a reducible scrotal sac hernia, left wrist weakness, and a reported broken face and jaw from three months prior. Question marks were placed after the notation for the face and jaw injuries. (*Id*. at 9). He did not report any back pain or other back issues. The initial physical examination report indicated his back was normal. (*Id*. at 1). His head, mouth, and eyes were normal. (*Id*.). His visual acuity was listed as 20/20 uncorrected in both eyes. (*Id*. 1). He was given a medical restriction to refrain from lifting anything heavier than 15 pounds and no overhead work. (ECF No. 44-1 at 2). He was given a limitation of one arm/hand duty for 60 days. (*Id*. at 3). On November 25, 2020, and again on February 1, 2021, it was indicated that Nolen did not meet the criteria for an optometry consult. His visual acuity was 20/25 in the left eye and 20/20 in the right eye. (ECF No. 40-9 at 8).

Nolen was seen for a sick call on January 29, 2021, complaining of jaw pain, back pain, and an eye complaint. (ECF No. 40-9, p. 7). The nurse referred him to provider for evaluation of the complaints. (*Id*.). Exam notes on February 22, 2021, state:

> present to sick call with left inguinal bulging. Pain noted during palpation. c/o left shoulder/arm/wrist pain. States he suffered police brutality about 6 months ago. Active ROM noted to left shoulder. c/o broken jaw and face fracture but states he has not had any medical attention for his injuries. facial symmetric noted. no swelling noted to jaw area. able to open/close mouth. no c/o difficulty chewing or swallowing. (*Id*. at 6).

On February 25, 2021, Nolen was informed that his hernia did not meet the criteria for surgery at that time. (*Id*. at 3). An x-ray of his left shoulder was ordered. (*Id*.). On June 14, 2021,

8

Nolen was given a medical authorization to come to the infirmary for diabetic call twice a day. (ECF No. 44-1 at 4). He was also prescribed a diabetic and cardiac diet. (*Id*. at 5).

Nolen was transferred to the Benton Work Release Unit in August 2022. (ECF No. 36). He has not alleged that he ever received either hernia or facial surgery.

## II.     LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Nolen must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Nolen must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An

10

"inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Nolen's allegation that Defendant Elkins denied him medical care for his diabetes fails to meet the first prong of the deliberate indifference test because he has provided no objective medical evidence that he was diagnosed with diabetes either before or during his incarceration in HSCJ during dates relevant to this case. His February 16, 2020, intake sheet merely lists diabetes. (ECF

No. 44-6 at 2). His July 13, 2020, intake sheet, however, did *not* list diabetes. (*Id*. at 3). At his deposition, Nolen testified that he had only started taking Metformin "a little while," "not long" before he was incarcerated. (ECF No. 40-12 at 40). He testified it was prescribed at the VA, but he could not remember the date. (*Id*.). There is no evidence in the summary judgment record that he was diagnosed as a diabetic or prescribed Metformin by the VA. Nolen further testified he never told anyone at HSCJ that he took Metformin, either verbally or in a written grievance or request. (*Id*. at 41). He was unable to describe how the lack of Metformin affected him during his incarceration in HSCJ. When asked how the lack Metformin affected him, he instead stated that he was told in May 2021 at "309 Washington" that his blood sugar and A1C were very high. (*Id*. at 41-42). Nolen was transferred to the ADC on October 14, 2020. His intake exam on that date did not list diabetes as a condition. (ECF No. 40-9 at 1, 5). He denied having diabetes mellitus at his ADC intake exam. (*Id*. at 5). Diabetes testing is first mentioned in his ADC medical records on June 9, 2021, when an A1C test was ordered. (*Id*. at 2). The next medical notation after the AIC test, which does not contain date information, prescribed Metformin and insulin. (*Id*.). An ADC medical authorization, dated June 14, 2021, states he should come to the infirmary twice a day for diabetic call. (ECF No. 44-1 at 4). Thus, based on the summary judgment record, Nolen was not diagnosed with diabetes until he was in the ADC for approximately eight months. As such, he failed to meet the first prong of the deliberate indifference test concerning his diabetes for his claims in this case.

Likewise, while at CHI St. Vincent on July 13, 2020, Plaintiff did not complain of left shoulder pain and was not diagnosed with any left shoulder issues. (ECF No. 44-1 at 12-33). The taser probe was in the upper right side of his back. (*Id*. at 31). Thus, Nolen failed to meet the first

prong of the deliberate indifference test concerning his left shoulder issue for his claims in this case.

The summary judgment record contains objective medical evidence that Nolen was diagnosed with an inguinal hernia, a nondisplaced fracture of his right jaw, a closed blowout fracture of the medial left orbit, a sprained left wrist, and a bulging cervical disc on July 13, 2020. These conditions meet the first prong of the deliberate indifference test. Nolen did not, however, provide verifying medical evidence that Defendants ignored an acute or escalating situation or that any delay in treatment adversely affected his prognosis. As such, he did not meet the second, subjective prong of the deliberate indifference test regarding any of these medical issues.

Nothing in the summary judgment record indicates the delay of hernia surgery while he was in HSCJ had any adverse effect on his health or caused the hernia to worsen. Plaintiff had an inguinal hernia for years prior to his claims in this case. He was admitted to the hospital for elective repair surgery twice in 2018, but each time the surgery was cancelled because he tested positive for cocaine. He was released early from HSCJ on May 1, 2020, to seek hernia surgery. He apparently only found hernia surgery to be an urgent need while incarcerated, as he waited over a month to make a single phone call to the VA hospital, did not answer the VA's voice mail or letter, and never sought or received any hernia treatment before being arrested again two-and-a-half months after being released. Medical staff in the ADC found that the hernia was reducible and did not meet criteria for surgery. To date, Nolen has not had hernia surgery. Nolen has, therefore, failed to raise a genuine issue of fact as to the second prong of the deliberate indifference test regarding his hernia. *See, e.g. Perry v. Helder*, 5:17-CV-05185, 2018 WL 4088790, at *7 (W.D. Ark. Aug. 27, 2018) (summary judgment appropriate when Plaintiff has failed to present any verifying medical evidence that the denial or delay of surgery while he was incarcerated had any

adverse effect on his health or caused the hernia to worsen, and the ADC later did nothing to treat the hernia.).

This leaves Nolen's allegations concerning his facial fractures, sprained left wrist, and back. Much of Defendant Elkins' affidavit regarding these injury allegations is troubling. (ECF No. 40-13). Elkins is the contracted medical provider at the facility. It is unclear how he was completely unaware of Nolen's injuries from the July 13, 2020, arrest, or how he never received any of the CHI St. Vincent paperwork indicating the need for naproxen, amoxicillin, or follow-up evaluations with the two referred surgeons named on that paperwork.[7] (ECF No. 40-13 at 2-3). It is also unclear how he remained unaware of the facial fractures and other injuries after Nolen submitted an undated medical request[8] (ECF No. 40-4 at 2), and two grievances concerning them on July 17, 2020, and July 18, 2020 (ECF No. 40-3 at 62-64, 40-4 at 8-9). The undated medical request states:

> Broken Jaw, fractured face, Hernia re-opened. I'm to have a doctor look at my face for surgery. Because of my injuries I should be released to my doctor's care. Carona[9] is in this Jail. I need to see the Sheriff.

(ECF No. 40-4 at 8-9). In his July 17, 2020, grievance, Nolen states:

> I am in pain I lost visi[o]n in my left eye. I was released bc of my hernia now I have that plus a fractured face[,] broken jaw and bruised wrist and left side of my

---

[7] Similarly, Defendant Elkins also stated he did not get the entire ER record from Baptist Health – Hot Springs in February regarding a surgery consult for Plaintiff's hernia. He states he only got the single sheet stating, "noncompliance by refusing intervention or support." (ECF No. 40-13 at 1). Defendants' Statement of Facts also quotes this noncompliance phrase and cites the Jail Medical File, albeit on the incorrect page of that file. (ECF No. 40 at 4, ¶ 11). The first page of the Jail Medical File includes a single page entitled "After Visit Summary" for Nolen's February 15, 2020, ER visit. (ECF No. 40-4 at 1). It includes the noncompliance statement. On that same sheet of paper, under the heading "What's next" are the directions to "Follow up with surgery asap. Call on Monday." (*Id.*). Slightly to the right, under "Your Next steps" are directions to call Dr. Hemo in one day. (*Id.*).
[8] The medical request was unsigned by an officer or physician but was included as part of the jail medical file by Defendants.
[9] The court will infer this to mean the corona virus responsible for the COVID-19 pandemic.

14

> body Im in pain and the officers are to schedule a surgery they ha[v]e not attempted
> Im in pain constan[t]ly and my mea[l]s are not what I can eat propoperty.

(ECF No. 40-3 at 62). In the response to this grievance, Defendant Lingo indicated he would "give this to the doc and he will see you when he comes." (*Id*.). Lingo also offered him ibuprofen for pain and soft mashed food until the doctor could see him. (*Id*.).

In his grievance of July 18, 2020, Nolen states he is having chest issues, he has lost vision in one eye, and his hernia is bulging and needs surgery. (ECF No. 40-3 at 64). The response states a medical request form would be brought for him to submit. (*Id*. at 62). A handwritten staff note states "refused to be seen" on a copy of the July 18, 2020, grievance. (*Id*. at 65). Defendant Elkin's affidavit states Nolen refused to see him on July 18, 2020, but it does not indicate what medical issue he had planned to examine Nolen for on that day. (ECF No. 40-13 at 2). Nolen disputes that he ever refused treatment. (ECF No. 44 at 7). Finally, there is the lack of any medication record for July 2020, after Nolen was prescribed naproxen and amoxicillin at the CHI St. Vincent ER for his injuries. The medication administration records indicate he got both drugs starting in August, more than two weeks after he was booked into HSCJ. Defendant Elkins states it was administered not for Nolen's alleged injuries, but for a respiratory infection. (ECF No. 40-13 at 2). There is no evidence in the summary judgment record that Nolen placed a grievance or request concerning a respiratory infection in July or August.

Nonetheless, nothing in the summary judgment record indicates the delay of follow-up appointments or surgery for his facial fractures, sprained left wrist, and back adversely affected Nolen's health or prognosis. After the undated medical request and the two grievances noted above in July 2020, Plaintiff did not file any further grievances or requests concerning his face, wrist, or back until a few days prior to his transfer to the ADC on October 14, 2020. (ECF No. 40-3 at 67-68; 44-2 at 18-25). Nolen's ADC intake records do not indicate any back issues, and

15

he was not assigned any medical limitations concerning his back. His report of facial fractures was noted on intake with question marks. An examination of his face noted it was symmetrical, there was no swelling, and he reported no issues with chewing or swallowing. There is no evidence Nolen was placed on a liquid or soft diet for issues with his jaw in the ADC. He was able to eat crunchy snack foods, such as trail mix, potato chips, crunch granola bars and corn chips while in HSCJ after July 13, 2020. (ECF No. 40-5). Nolen alleges his vison is blurry in the left eye from the left orbital fracture, but his uncorrected vision was 20/20 in both eyes on ADC intake. An exam a few months later indicated 20/25 in the left eye and 20/20 in the right, and he did not meet the criteria for an optometry consult. He received a 60-day one-hand/arm work restriction for his left wrist on intake, but there is no indication that it was renewed after that initial term expired. Nolen has, therefore, failed to raise a genuine issue of fact as to the second prong of the deliberate indifference test regarding his facial fractures, sprained left wrist, and back. *See, e.g., Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in treating fractured wrist).

Nolen has failed to raise any genuine issues of material fact concerning a denial or delay of medical care while at HSCJ, and the Defendants are entitled to summary judgment as a matter of law.

### IV. CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 38) be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

    DATED this 16th day of June 2023.

/s/ *Mark E. Ford*<br>
HON. MARK E. FORD<br>
UNITED STATES MAGISTRATE JUDGE