IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

THOMAS TERRAIL NOLEN                                                          PLAINTIFF

v.                                   Case No. 6:21-cv-6092

SHERIFF MIKE CASH;
CAPTAIN JOSH LINGO; and
DR. DARRELL ELKINS                                                          DEFENDANTS

## ORDER

Before the Court is the Report and Recommendation filed June 16, 2023, by the Honorable

Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas.  ECF No. 47.

Judge Ford recommends that Defendants' Motion for Summary Judgment (ECF No. 38) be

granted.  Plaintiff has responded with objections.  ECF No. 48.  The Court finds the matter ripe

for consideration.

## I.  BACKGROUND

This is a civil rights action filed under 42 U.S.C. § 1983.  Plaintiff alleges that Defendants

violated his constitutional rights by delaying or denying medical treatment while he was

incarcerated in the Hot Spring County Jail ("HSCJ") in 2020.  The Court will summarize Plaintiff's

medical encounters and incarceration timeline here, but Judge Ford gives a more detailed account

in his Report and Recommendation.  ECF No. 47, pp. 5-9.

On May 2, 2018, Plaintiff presented at the emergency room at Baptist Health—Hot Spring

County complaining of hernia pain.  He was diagnosed with an inguinal hernia and advised that

he needed surgery as soon as possible.  He returned to Baptist Health—Hot Spring County on May

10, 2018, stating that he was "unsure how to get with a surgeon."  ECF No. 40-8, at 17.  On June

18, 2018, he was admitted at Baptist Health—Hot Spring County for hernia surgery, but the surgery was postponed because Plaintiff tested positive for cocaine.  He was again admitted for surgery on July 16, 2018, but that surgery was also cancelled when he tested positive for cocaine. Plaintiff was discharged.   Approximately eleven months later, Plaintiff presented at Baptist Health—Hot Spring County on June 19, 2019, again requesting care for his hernia.  He reported that the hernia had emerged five years prior.  Plaintiff denied any pain, and the emergency room physician advised Plaintiff to follow up with his primary care provider in two days and as needed.

On December 26, 2019, Plaintiff was booked into HSCJ and then transported to Baptist Health—Hot Spring County, where he complained of right groin pain and right wrist pain. Plaintiff attributed the right wrist pain to overly tight handcuffs.  He reported that the groin pain began when his boots were taken off him.  Plaintiff was transferred that same day to Baptist Health—Little Rock, where it was determined that outpatient elective surgery was the appropriate action.  That same day, Plaintiff was released from HSCJ, with the disposition for his release stating that he was released due to emergency surgery.  ECF NO. 40-2, at 1.

On January 5, 2020, Plaintiff presented again at Baptist Health—Hot Spring County complaining of hernia pain on his right side.  He was told to follow up with his primary care physician within two days.

Plaintiff was arrested again on February 15, 2020, and was taken to Baptist Health—Hot Spring County that same day.  He complained of low back pain, groin pain, and lower jaw pain. He attributed the pain to injuries from his arrest.  No facial fracture was found.  He did not fully cooperate with the medical staff, but he was diagnosed with a right inguinal hernia.  It was recommended that he follow up with a surgeon as soon as possible.

Plaintiff was booked into the HSCJ on February 16, 2020.  He was released on May 1,

- 2 -

2020, so that he could get treatment for his hernia.  Upon release, law enforcement officers took Plaintiff to the emergency room at the VA Hospital in Little Rock.  Because it was the beginning of the Covid-19 pandemic, Plaintiff was not permitted to enter the emergency room.  Plaintiff was told to exit the hospital, so he hitchhiked back to his house.  Plaintiff states that he then tried to establish care at the VA Hospital but was unsuccessful.

On July 13, 2020, Plaintiff was arrested again and taken to CHI St. Vincent Hospital after being tased.  The taser probe was still in his right shoulder, and Plaintiff complained of pain in his left rib cage and left wrist.  He was diagnosed with a closed blow-out fracture of the left orbital floor, closed fracture to his right jaw, contusion of the chest wall, foreign body in skin, left wrist sprain, and methamphetamine abuse.  The hospital staff noted Plaintiff's hernia and Plaintiff's statement that the sight in his left eye was blurry.  Plaintiff was referred to an oral surgeon and an ophthalmologist for follow-up care.  Later that same day, Plaintiff was discharged from the hospital and booked into the HSCJ.

On October 14, 2020, Plaintiff was transferred to the Arkansas Division of Correction ("ADC").  Handwritten notes indicate a reducible scrotal sac hernia, left wrist weakness, and a reported broken face and jaw from three months prior.  Question marks were placed after the notation for the face and jaw injuries.  Plaintiff did not report any back pain or back issues.  The initial physical examination report indicated his back, head, mouth, and eyes were normal.  His vision was reported as 20/20 uncorrected in both eyes.  On November 25, 2020, and February 1, 2021, it was indicated that Plaintiff did not meet the criteria for an optometry consult.  His visual acuity was 20/25 in the left eye and 20/20 in the right eye.

On January 29, 2021, Plaintiff complained about his eyes and pain in his back and jaw.  He was examined by a prison medical provider who noted facial symmetry, no swelling to the jaw

area, Plaintiff's ability to open and close his mouth, and no difficulty chewing or swallowing.

On February 25, 2021, Plaintiff was informed that his hernia did not meet the criteria for surgery at that time.  On June 14, 2021, Plaintiff was given a medical authorization to come to the infirmary for diabetic call twice a day and was prescribed a diabetic and cardiac diet.  In August 2022, Plaintiff was transferred to the Benton Work Release Unit.  It does not appear that Plaintiff has undergone hernia or facial surgery.

On June 1, 2021, Plaintiff filed his complaint in this Court, alleging three claims.  For his first claim, Plaintiff alleges that after his arrest on February 15, 2020, all Defendants delayed and/or denied medical treatment to Plaintiff for seventy days until he was released for hernia surgery.  For his second claim, Plaintiff alleges that in July 2020, former Captain Josh Lingo and Dr. Darrell Elkins denied him medical treatment when they failed to follow up with Plaintiff regarding surgery for his facial injuries after his visit to the emergency room immediately following his arrest.  He alleges that he did not receive treatment for his face despite submitting multiple requests and that Defendants Captain Lingo and Dr. Elkins knew about the recommendation for face surgery and did nothing.  For his third claim, Plaintiff alleges that Dr. Elkins denied Plaintiff medical treatment in March 2020 and July 2020 when Dr. Elkins failed to follow up on advised medical treatment by a hospital emergency room.  He further alleges that Dr. Elkins denied him medical care by not treating Plaintiff for diabetes.

Plaintiff sues Defendants in both their individual and official capacities.  For his official capacity claim against all Defendants, Plaintiff alleges that the HSCJ often denies medical attention to inmates and does not follow up or make medical records available.

Defendants argue that they are entitled to summary judgment on all claims.  Plaintiff disagrees.

## II.  STANDARD OF REVIEW

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1).  Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.2(VII)(C).  After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation."  *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018).  Generally, "objections must be timely and specific" to trigger *de novo* review.  *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).  However, the Court may, in its discretion, conduct a *de novo* review of any issue in a report and recommendation.  *Thomas v. Arn*, 474 U.S. 140, 154 (1985).  The Court must apply a liberal construction when determining whether *pro se* objections are specific.  *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).

## III.  DISCUSSION

Judge Ford recommends that the Court grant Defendants' summary judgment motion (ECF No. 38) and dismiss Plaintiff's claims against all Defendants.  The Court agrees with this recommendation.

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  The

deliberate indifference standard includes both an objective and a subjective component. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). To succeed on a deprivation of medical care case, "an inmate must show both that he had an objectively serious medical need and that the defendant knew of and disregarded that need." *Coleman v. Rahija*, 114 F. 3d 778, 784 (8th Cir. 1997) (citing *Miller v. Schoenen*, 75 F.3d 1305, 1309 (8th Cir. 1996)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

"When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotation marks omitted). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious

medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact. *Schaub*, 638 F.3d at 914 (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

The Court will now address Plaintiff's three individual capacity claims. After the Court analyzes these claims, the Court will address Plaintiff's official capacity claim.

### A. Claim One Against All Defendants

Plaintiff alleges that, after his arrest on February 15, 2020, Defendants delayed or denied medical treatment to Plaintiff for approximately seventy days until he was released early to seek hernia surgery. Plaintiff had an inguinal hernia for years prior to his claims in this case. He was admitted to the hospital for elective repair surgery twice in 2018, but the surgery was cancelled each time because Plaintiff tested positive for cocaine. He was released early from HSCJ jail on May 1, 2020, to seek hernia surgery, but he never had the surgery. Plaintiff claims that it was imperative he receive medical treatment for his hernia while incarcerated in 2020; however, Plaintiff has not presented any evidence showing that the delay of treatment had any adverse effect on his health or caused his hernia to worsen. Further, he has not presented any evidence showing that hernia surgery was medically necessary. Because Plaintiff has failed to place verifying medical evidence into the record to establish the detrimental effect of delay in medical treatment for his hernia or that hernia surgery was necessary, the Court agrees with Judge Ford that Defendants are entitled to summary judgment on this claim. *See Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (explaining that when a prisoner complains of a delay in medical care, he must establish that he suffered some detrimental effect as a result of the delay). Consequently, the Court finds that this claim must be dismissed.

**B.  Claim Two Against Captain Lingo and Dr. Elkins**

Plaintiff alleges that in July 2020, Defendants Captain Lingo and Dr. Elkins delayed or denied him medical treatment when they failed to follow up with Plaintiff regarding surgery for his face (fractured right jaw and fracture of the medial left orbit) after he was taken to the emergency room immediately following his arrest.  He further alleges that was denied medical treatment for his cervical disc and sprained wrist that resulted from the same arrest.

Judge Ford found that Plaintiff has presented no verifying medical evidence that Captain Lingo and Dr. Elkins knew of and ignored an acute or escalating situation or that any delay in treatment adversely affected Plaintiff's prognosis.  After Plaintiff was examined at CHI St. Vincent Hospital, he was released from the hospital without a finding that any immediate surgery was necessary.  Although his discharge instructions did reference follow-up visits with a surgeon and ophthalmologist, Dr. Elkin testified that he did not receive a copy of Plaintiff's discharge instructions in connection with his July 13, 2020 emergency room visit.  He further testified that he was not aware that the discharge paperwork diagnosed Plaintiff with facial fractures or that a surgery consultation was recommended.  ECF No. 40-13, at ¶ 9.

In response to a grievance filed on July 17, 2020, in which Plaintiff complained of a fractured face, broken jaw, and body pain, Captain Lingo told Plaintiff that he would give the complaint to the doctor and offered Plaintiff ibuprofen for pain and soft mashed food.  However, the records indicate that Plaintiff refused to see Dr. Elkins on July 18, 2020.  After July 18, 2020, there is no evidence in the summary judgment record showing that Plaintiff placed a grievance or medical request concerning his face, wrist, or back until a few days prior to his transfer to ADC on October 14, 2020.

The intake records from when Plaintiff arrived at ADC do not indicate any back issues.

- 8 -

His report of facial fractures was noted on the form with question marks; however, an examination of his face noted that it was symmetrical, there was no swelling, and he reported no issues with chewing or swallowing.

Thus, the Court agrees with Judge Ford that Plaintiff has not presented any evidence that Captain Lingo and Dr. Elkins actually knew of any serious medical need and deliberately refused to treat any serious medical need. The Court also agrees with Judge Ford that Plaintiff has failed to place verifying medical evidence into the record to establish the detrimental effect of delay in medical treatment for his facial injuries, back injuries, and sprained wrist. Thus, the Court finds that this claim must be dismissed.

### C. Claim Three Against Dr. Elkins

Plaintiff alleges that Dr. Elkins delayed or denied Plaintiff medical treatment in March 2020 and July 2020 when Dr. Elkins failed to follow up on advised medical treatment by a hospital emergency room. He further alleges that Dr. Elkins denied him medical care by not treating Plaintiff for diabetes.

As discussed earlier in this Order, there is no evidence that Dr. Elkins actually knew of but deliberately disregarded a serious medical need of Plaintiff. Dr. Elkins stated in his affidavit that he did not receive a copy of Plaintiff's discharge instructions in connection with his July 13, 2020 emergency room visit. He further testified that he was not aware that the discharge paperwork diagnosed Plaintiff with facial fractures or that a surgery consultation was recommended. ECF No. 40-13, ¶ 9. Plaintiff has presented no evidence that contradicts this statement from Dr. Elkins. Plaintiff filed a grievance on July 17, 2020, stating that he needed to have a doctor look at his face for surgery. Captain Lingo responded to this request and indicated he would notify the doctor. However, on July 18, 2020, Plaintiff refused to see Dr. Elkins, and there is no indication that Dr.

Elkins knew why Plaintiff had asked to see a doctor.  After July 18, 2020, Plaintiff did not file any grievances concerning his face.  Further, there is no evidence in the record showing that a delay in surgery for his facial injuries adversely affected Nolan's health or prognosis.  In fact, when he arrived at ADC on October 14, 2020, the intake records noted his self-reported facial injuries but also noted that his face was symmetrical, there was no swelling, and he reported no issues with chewing or swallowing.  Thus, the Court agrees with Judge Ford and finds that Dr. Elkins is entitled to summary judgment on this claim regarding a lack of follow-up treatment for his facial injuries.

The Court turns now to the allegation that Dr. Elkins denied him medical care by not treating Plaintiff for diabetes.  Judge Ford found that Plaintiff had not submitted any objective medical evidence that Plaintiff had been diagnosed with diabetes either before or during his incarceration in HSCJ during the dates relevant to this case.  On the February 16, 2020, HSCJ intake sheet, Plaintiff indicated that he suffered from diabetes.  ECF No. 44-6, at 2.  However, on the July 13, 2020, HSCJ intake sheet, Plaintiff indicated that he did not suffer from diabetes.  ECF No. 44-6, at 3.  At Plaintiff's deposition, he testified that he had only started taking a diabetes medication (Metformin) "not long" before he was incarcerated.  ECF No. 40-12, at 40.  Plaintiff also testified that he never told anyone at the HSCJ that he took Metformin.  Plaintiff testified that he was prescribed Metformin by the VA Hospital, but there is no evidence in the record that he was diagnosed with diabetes or prescribed Metformin prior to his incarceration in the HSCJ.  Thus, the Court agrees with Judge Ford Plaintiff fails to meet the first prong of the deliberate indifference test.  In other words, Plaintiff cannot show that he suffered from an objectively serious medical need because there is no evidence that he had been diagnosed with diabetes by a physician or that he suffered from a condition that was so obvious that even a layperson would easily recognize the

necessity for a doctor's attention.  Accordingly, the Court finds that this claim regarding diabetes must be dismissed.

### D.  Official Capacity Claims

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  To sustain an official capacity claim against such entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (2006).  However, for official capacity liability to attach, a court must first find individual liability on an underlying substantive claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).  Here, because the Court has found that Defendants' actions were not unconstitutional, Plaintiff cannot make a prima facie case against Hot Spring County under § 1983.  *See id.* Accordingly, the Court finds that Plaintiff's official capacity claims must be dismissed.

### E.  Plaintiff's Objections

Plaintiff lists sixteen objections to the Report and Recommendation.  Several of the objections dispute certain facts that are not material.  For example, Plaintiff states that he received crunchy snacks from the commissary but never ate them.  He also states that Captain Lingo was listening to his phone calls at HSCJ.  Other objections state legal conclusions.  For example, Plaintiff states that he had serious medical needs on December 19, 2019 and July 13, 2020.  He also states that the HSCJ did not follow its medical policies and disregarded his medical care.  He further states that Dr. Elkins was incompetent.  Other objections allege certain facts that are not supported by the evidence in the record, such as Plaintiff's assertion that he made countless requests to see a doctor and that police officers caused his hernia.  None of Plaintiff's objections address Judge Ford's findings regarding the absence of proof in the record to support each of

Plaintiff's claims.  Accordingly, after reviewing all sixteen of Plaintiff's objections, the Court finds that they must be overruled.

## IV. CONCLUSION

Upon *de novo* review of the Report and Recommendation, and for the reasons discussed above, the Court finds that Plaintiff has offered neither fact nor law which would cause the Court to deviate from Judge Ford's Report and Recommendation.  Therefore, the Court overrules Plaintiff's objections (ECF No. 47) and adopts the Report and Recommendation *in toto*.  ECF No. 41.  Accordingly, Defendants' Motion for Summary Judgment (ECF No. 38) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 25th day of September, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge